IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 1, 2022

## MCGINNIS OIL COMPANY LLC v. WILLIAM H. BOWLING D/B/A TEAGUE GROCERY ET AL.

**Appeal from the Circuit Court for Fayette County**
**No. 20-CV-61        J. Weber McCraw, Judge**

_____

### No. W2021-01104-COA-R3-CV

_____

This is a contract dispute. The trial court dismissed Appellant's action for failure to state a claim based on the statutes of limitations prescribed by Tennessee Code Annotated section 47-2-725 and/or Tennessee Code Annotated section 28-3-109(a)(3). We reverse and remand this matter to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Jacob Webster Brown, Memphis, Tennessee, for the appellant, McGinnis Oil Company, LLC.

Darrell N. Phillips, Germantown, Tennessee, for the appellees, William Bowling and Teague Grocery Store, LLC.

### MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by **memorandum opinion** when a formal opinion would have no precedential value. When a case is decided by **memorandum opinion** it shall be designated "**MEMORANDUM OPINION**," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTUAL AND PROCEDURAL HISTORY

Appellant McGinnis Oil Company, LLC ("McGinnis") is a Tennessee company that markets petroleum products, including gasoline and diesel fuel. Its operations includes wholesaling Shell™-brand gasoline and diesel fuel. In April 2008, McGinnis entered into a Retail Product Sales Agreement ("RPSA") with Appellee William Bowling d/b/a Teague Grocery and Teague Store, LLC (collectively, "Bowling") for the sale of Shell-branded gasoline. The RPSA set forth a termination date of August 31, 2018, "subject to Sellers right to terminate th[e] Agreement in accordance with applicable Law." The RPSA further provided:

> Upon expiration, this Agreement will continue on a month-to-month basis for no longer than 36 months until the parties either execute a new agreement or Seller terminates or does not renew this Agreement in accordance with applicable Law.

Article 3 of the RPSA governed the terms of payment, providing:

> (b) TERMS OF PAYMENT: (1) Gasoline, gasohol, biodiesel and diesel fuel: 7 days.
>
> Buyer shall pay for the Products in accordance with Seller's payment terms in effect from time to time, any of which may be altered or revoked with notification to Buyer.

Article 3(c) provided:

> Seller's extension of credit for the purchase of Products, the terms under which any such credit will be extended or maintained, and the amount of credit extended are subject to the sole discretion of Seller, any of which terms or amount may be altered or revoked with notification to Buyer.

On December 7, 2020, McGinnis filed a complaint against Bowling seeking damages in the amount of $773,156.37.[2] In its complaint, McGinnis asserted that "[f]rom very early on in his business relationship with McGinnis Oil, Bowling was behind on the balance he owed McGinnis Oil under the RPSA[]" and that Bowling had fallen behind on payments totaling $460,253.32 by April 2011. McGinnis asserted that "[a]s Bowling's debt snowballed," McGinnis representative, William Cox, "communicated regularly" with Mr. Bowling about the over-due payments, that Bowling accepted monthly statements

---

[2] It appears undisputed that McGinnis filed its initial complaint on November 8, 2019, and that it nonsuited the complaint on September 10, 2020.

"without exception or objection," and that McGinnis and Bowling agreed that McGinnis "would extend credit to Bowling equal to the amount of the overdue balance and would hold the debt on said credit in abeyance, to be remedied by Bowling at a later time." McGinnis asserted that, at the recommendation of Bowling's business consultant Chris Zuercher, "the parties mutually agreed that McGinnis Oil would maintain a segregated account to track the debt on the credit it was extending to Bowling, to be indicated on McGinnis Oil's subsequent monthly statements to Bowling, and that Bowling would pay down the debt over time." McGinnis submitted that "in accord with the agreement and consent of Bowling, McGinnis Oil opened a second account for Bowling titled 'Teague Two.'" McGinnis asserted that the purpose of the second account was to separate Bowling's debt from his ongoing fuel purchases from regular operations going forward[,]" that Bowling understood and agreed to the establishment and purpose of the second account, and that the Teague Two account was used to track Bowling's orders in April 2011. McGinnis asserted that it "sent Bowling account statements reflecting both his current operating balance (under the Teague Two account) and his debt for the credit McGinnis Oil had extended him (under the Teague Store account)[]" and that "Bowling never questioned or objected to the indication of the debt on these statements."

McGinnis further asserted in its complaint that, by December 2013, Bowling "had accrued an outstanding balance of $312,903.05 under McGinnis Oil's Teague Two account[.]" McGinnis asserted that, notwithstanding its "right to withhold future fuel deliveries until Bowling became current on [the] balance[,]" McGinnis and Bowling agreed that McGinnis would add the amounts due under the Teague Two account to the credit extended to Bowling. McGinnis asserted that "[i]n December 2013, after discussing possible courses of action, McGinnis Oil and Bowling mutually agreed that McGinnis Oil would forbear on taking legal or other collection action against Bowling on the total $773,156.37 balance and, in contemplation of an ongoing business relationship, instead would extend Bowling credit in an equal amount to be due and owing from Bowling, without specification as to whether this loan would be payable on demand or at some specific time in the future." McGinnis asserted that, "[i]n exchange for McGinnis Oil's forbearing on the debt, Mr. Bowling agreed to the $773,156.37 debt balance and to pay the debt "upon demand." McGinnis further asserted that Bowling agreed to "(a) not declare bankruptcy, (b) remain current on all subsequent fuel purchases from McGinnis Oil, and (c) begin paying an additional $0.02 per gallon of gasoline with the express understanding and intent that McGinnis Oil would apply any additional 'profits' it generated from the fuel-price increase against the $773,156.37 credit it had extended to Bowling." McGinnis asserted that Mr. Bowling and Mr. Cox agreed that the debt/credit would again be segregated and that the Teague Two account would be "zeroed out" and used to track Bowling's orders through July 2019. It asserted that the parties continued to discuss Bowling's repayment of the debt, including a new agreement providing for an aggressive payment schedule.

McGinnis asserted that it continued to forbear on its right to collect the debt in

exchange for Bowling's agreement to pay the credited amount and the running balance on the account and to "execute a new long-term contract containing the terms by which Bowling would pay McGinnis Oil back the Teague Store balance." McGinnis included copies of texts between Mr. Bowling and Mr. Cox in support of its assertions.

McGinnis asserted that, on July 17, 2019, Mr. Bowling notified Mr. Cox by email that, despite "the men's mutual understanding that Bowling would make arrangements for paying down his sizable debt … under the terms of a renewed contract[,]" Bowling would not be renewing the contract. McGinnis asserted that Mr. Cox telephoned Mr. Bowling on the same day, and that Mr. Bowling "for the first time ever … alleged that McGinnis Oil had been violating the RPSA for years by overcharging him for gasoline and claimed that McGinnis Oil owed *him* money."

McGinnis also asserted that it contacted Bowling through legal counsel in August 2019 "to inform him in writing that he was in default of the December 2013 extension of credit and to demand payment of the debt balance." It asserted that Bowling failed to remit payment in response to its demand letter and that McGinnis filed its first action in November 2019. McGinnis asserted that Bowling filed a counterclaim in February 2020, alleging that McGinnis owed him for overcharges under the RPSA. McGinnis nonsuited its action on September 10, 2020.

In its December 2020 complaint, McGinnis asserted claims for damages for breach of contract and unjust enrichment. In its breach of contract claim, McGinnis asserted that "[b]ecause the December 2013 credit extension did not specify whether the loan was to be paid at any specific time or upon demand, by law it was a demand loan, payable immediately." It alleged that Mr. Bowling had "materially breached his promises to pay back McGinnis Oil's December 2013 demand loan." McGinnis sought damages in the amount of $773,156.37, prejudgment interest, reasonable attorneys' fees, and costs.

In May 2021, Bowling filed a motion to dismiss for failure to state a claim pursuant to Tennessee Rules of Civil Procedure Rule 12.02(6). In its motion, Bowling asserted that McGinnis's cause of action "last accrued" in December 2013. It observed, "Tennessee Code Annotated section 47-2-725 establishes a four-year statute of limitations for contracts for the sale of goods, Tennessee Code Annotated section 28-3-109(a)(3) establishes a general six-year statute of limitations for breach of contract, and Tennessee law establishes a three-year statute of limitations for claims of unjust enrichment." Bowling asserted, "here, under the applicable statute, either all, or the majority of, Plaintiff's claims are excluded. Plaintiff claims the outstanding unpaid balance last accrued in December 2013, yet Plaintiff did not file its complaint until November of 2019. As a result, the statute of limitations bars Plaintiff s claims because the statute of limitations ran in December 2017."

Bowling did not specify whether it sought dismissal under the six-year or four-year limitations period in its motion. However, in its memorandum of law in support of the

motion, Bowling relied on Tennessee Code Annotated section 47-2-725(1)-(2) for the proposition that a four-year limitations period is applicable to this matter and that, under the statute, the "cause of action accrues when the breach occurs."[3]  It submitted, "[a]s a result, the question before this Court is, assuming Teague Store breached the Agreement, when did the breach occur."  Bowling asserted that its agreement with McGinnis was a "severable contract" and that the last breach occurred prior to December 2013.

In its August 2021 response to Bowling's motion to dismiss, McGinnis asserted that Bowling's argument in support of its motion to dismiss "ignore[d] the RPSA's plain language."  It argued that it extended credit to Bowling as permitted by Article 3(c) of the RPSA; that, under the section, the "loan" became due when McGinnis demanded payment in August 2019, when Bowling informed McGinnis that it did not intend to renew the contract; and that Bowling breached the parties' contract in 2019, when it refused payment. McGinnis asserted:

> McGinnis Oil's breach-of-contract claim does not arise out of Teague Store's failure to pay within seven days of each delivery of Product. It arises from Teague Store's failure to pay the credit extended under the terms of the RSPA when demand for payment was appropriately made.

The trial court granted Bowling's motion to dismiss by order entered on August 25, 2021, and McGinnis filed a timely notice of appeal to this Court.

## II.  ISSUES

The issue presented by this appeal, as we state it, is whether the trial court erred by granting Bowling's motion to dismiss for failure to state a claim based on the statute of limitations.

## III.  STANDARD OF REVIEW

It is well-settled that a Tennessee Rules of Civil Procedure Rule 12.02(6) motion to dismiss for failure to state a claim tests "'only the legal sufficiency of the compliant, not the strength of the plaintiff's proof or evidence.'"  *Elvis Presley Enter., Inc. v. City of Memphis*, 620 S.W.3d 318, 323 (Tenn. 2021) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)).  When considering a motion filed under the rule, the trial court must determine whether the allegations of the complaint, if considered true, constitute a cause of action as a matter of law. *Id.* (citation omitted).  "The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings

---

[3] We observe that Bowling filed its memorandum of law in January 2021, several months before it filed its motion to dismiss.

alone." ***Webb. v. Nashville Area Habitat for Humanity***, 346 S.W.3d 422, 426 (Tenn. 2011).

When considering a motion to dismiss, the trial court "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" ***Id.*** (quoting ***Tigg v. Pirelli Tire Corp.,*** 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting ***Trau-Med of Am., Inc. v. Allstate Ins. Co.,*** 71 S.W.3d 691, 696 (Tenn. 2002))) (additional citations omitted). It should grant the motion "'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" ***Id.*** (quoting ***Crews v. Buckman Labs. Int'l, Inc.,*** 78 S.W.3d 852, 857 (Tenn. 2002)) (additional citations omitted). "A Rule 12.02(6) motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but it asserts that the allegations fail to establish a cause of action." ***Leach v. Taylor***, 124 S.W.3d 87, 90 (Tenn. 2004).

When reviewing a trial court's grant of a Rule 12.02(6) motion to dismiss, we likewise must regard the allegations of the complaint as true. ***Elvis Presley Enter.***, 620 S.W.3d at 323 (citation omitted). Whether a lawsuit should be dismissed for failure to state a claim based on the statute of limitations presents a question of law which we review de novo with no presumption of correctness. ***Redwing v. Cath. Bishop for Diocese of Memphis***, 363 S.W.3d 436, 456 (Tenn. 2012).

## IV. ANALYSIS

We begin our review by noting that the purpose of statutes of limitations is to "promote fairness and justice." ***Redwing***, 363 S.W.3d at 456 (citation omitted). They are not "swords" but "shields" that ensure that actions are brought within a defined period of time. ***Id.*** (citations omitted). Statutes of limitations "are based on the presumption that persons with the legal capacity to litigate will not delay bringing suit on a meritorious claim beyond a reasonable time." ***Id.*** (citation omitted).

"A defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." ***Id.*** (citation omitted). The length of the limitations period is defined by statute, and the choice of which statute is applicable depends upon the "gravamen of the complaint." ***Id.*** (quoting ***Whaley v. Perkins,*** 197 S.W.3d 665, 670 (Tenn. 2006) (quoting ***Gunter v. Lab. Corp. of Am.,*** 121 S.W.3d 636, 638 (Tenn. 2003))) (internal quotation marks omitted). The question of accrual of the action "relates to the date on which the applicable statute of limitations begins to run." ***Id.*** (citation omitted).

The six-year limitations period generally applicable to a breach of contract action "begins to run when a contracting party first knows or should know that the contract will

not be performed." ***Wilkins v. Third Nat. Bank in Nashville***, 884 S.W.2d 758, 762 (Tenn. Ct. App. 1994). However, under Tennessee Code Annotated section 47-2-725, a cause of action for breach of a contract for sales "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Tenn. Code Ann. § 47-2-725 (2). The section also provides that the parties may agree to reduce the four-year limitations period prescribed by the statute to not less than one year "but may not extend it." Tenn. Code Ann. § 47-2-725(1). As Bowling asserted in its memorandum of law in support of its motion to dismiss, the dispositive issue relevant to Bowling's motion is the date on which the breach alleged by McGinnis occurred.

In its August 2021 order dismissing the matter pursuant to the statute of limitations, the trial court did not specify which statute is applicable to this matter. It stated, however, that "[t]he indebtedness in question was incurred prior to December 2013[,]" and that it "finds that no payments have been paid on the indebtedness of $773,156.37 since December 2013." The trial court's order states:

> Further, the Court finds that the business agreement entered between the parties and referred to as the "Retailer Product Sales Agreement" (RPSA) provided the on-going business arrangement for the respective parties but did not alter the time calculation of the statute of limitations on the prior indebtedness. The Plaintiff contends that the RPSA allowed the Plaintiff to change its forbearance of collection of the prior sales-related indebtedness to an extension of credit or loan and thus, because of this restructuring, its claim takes on a new statute of limitation calculation. Noteworthy to the issue at hand, the RPSA required all notices and amendments to the agreement to be in writing and addressed to the parties as provided in the agreement. The Court finds that no written notices altering the terms of payment were executed, and the Plaintiff cannot rely upon its unilateral alteration of the RPSA agreement to extend any statute of limitations period. Finding that the statute of limitations bars the Plaintiff s claims, Defendant's Motion to Dismiss is granted. Defendant's attorney fees are denied.

Bowling asserted in the trial court that, for purposes of its motion to dismiss, the last breach accrued in December 2013, when it failed to pay for amounts due under the RSPA. McGinnis, on the other hand, asserted that section 3(c) of the parties' contract provided for the extension of credit by McGinnis to Bowling; that the parties mutually agreed that McGinnis would extend credit to Bowling in exchange for forbearance of its right to commence an action; that texts between Mr. Cox and Mr. Bowling constitute evidence of a credit/loan agreement between the parties; and that Bowling breached the agreement in April 2019, when failed to comply with McGinnis's demand letter.

As noted above, Article 3(c) of the RPSA provides:

Seller's extension of credit for the purchase of Products, the terms under which any such credit will be extended or maintained, and the amount of credit extended are subject to the sole discretion of Seller, any of which terms or amount may be altered or revoked with notification to Buyer.

Thus, the contract by its terms provided for the extension of credit to Bowling.

It appears that the trial court granted Bowling's motion to dismiss this action before any discovery had taken place. As noted, we observe that McGinnis asserted that Bowling "breached his promises to pay back McGinnis Oil's December 2013 demand loan[]" in its complaint; that, for purposes of its motion to dismiss, Bowling asserted that the last breach occurred in December 2013; and that McGinnis asserted that Bowling breached the parties' credit agreement when it failed to pay upon demand in April 2019.

Whether, as McGinnis asserts, the parties agreed that credit would be extended to Bowling as provided by Article 3 of the contract and due upon demand; whether the texts between Mr. Cox and Mr. Bowling constitute notification and/or a written agreement; and whether the parties entered into a credit agreement when Bowling's debt was segregated from the Teague Two on-going account — supported by consideration in the form of McGinnis's forbearance of its legal right to collect the debt — are unresolved factual issues raised in the complaint that must be determined in order to decide 1) which limitations period is applicable to this matter; 2) when the alleged breach of contract accrued; and 3) whether the forbearance agreement asserted by McGinnis estops Bowling from asserting a statute of limitations defense.

As our supreme court has observed, "it must be remembered that we are addressing the standard in assessing the sufficiency of a single document filed at the very beginning of a case—the complaint. Our motion-to-dismiss jurisprudence reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits or of the weight of the facts pleaded, or as a docket-clearing mechanism. Rule 8.01 has not been amended and still only requires "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 437 (Tenn. 2011).

Construing McGinnis's complaint in the light most favorable to McGinnis, accepting its allegations as true, and drawing all reasonable inference in its favor, we conclude that the trial court erred by granting Bowling's motion to dismiss in this case. Remaining issues presented in the parties' briefs are pretermitted as premature and unnecessary to our disposition of this appeal.

## V. CONCLUSION

The trial court's judgment granting Bowling's motion to dismiss is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are taxed to the Appellee, William H. Bowling, d/b/a Teague Grocery, *et. al.*, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE
